# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3951 | **DATE** | 9/12/2001 |
| **CASE TITLE** | JOHN F. BELOM vs. NATIONAL FUTURES ASSOCIATION and JOY JU | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  The motion to dismiss [2-1] is granted. This action is dismissed with prejudice. Belom's motion for summary judgment [7-1] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 17 2001 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 9/12/2001 |
| SB courtroom deputy's initials | | 01 SEP 16 PM 3:18 Date/time received in central Clerk's Office | CB date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN F. BELOM | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 3951 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| NATIONAL FUTURES ASSOCIATION and JOY JU | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

John F. Belom sues National Futures Association ("NFA") and Joy Ju for declaratory judgment ("Count I") and injunctive relief ("Count II") pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 65. Belom seeks a declaration that excludes him from an arbitration between LFG, LLC ("LFG") and Joy Ju under NFA code of arbitration § 2(a). NFA moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Belom responded to that motion, and moves for summary judgment on Count I under Fed. R. Civ. P. 56. NFA's motion to dismiss is addressed first.

### BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Belom was company counsel of LFG, a registered futures commission merchant. Complaint ("Compl") at ¶ 9. NFA is a registered futures association with the Commodities Futures Trading Commission ("CFTC"). *Id.* at ¶ 3. LFG is a member of NFA. *Id.* Joy Ju, a LFG customer, filed an arbitration demand against LFG and Belom

1



for damages resulting from the purported wrongful termination of her ability to place orders directly with LFG's personnel at the Chicago Mercantile Exchange. Ju seeks recovery of more than $7,333,000 from Belom for negligence, recklessness, conversion, constructive fraud, violations of numerous federal and state statutes and regulations, and vicarious liability. *Id.* at ¶ 21. Belom sought dismissal from the arbitration, alleging he had not consented to the proceeding. The NFA denied his request because NFA code of arbitration § 2(a) required Belom's participation as an employee of LFG. *Id.* at ¶¶ 24-26.

## I. Motion to Dismiss

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the allegations in the complaint. *Conley*, 355 U.S. at 45-46. A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## II. NFA Code of Arbitration

Belom contends NFA code of arbitration § 2(a) violates the Commodity Exchange Act, 7 U.S.C. § 21(b)(10) ("CEA" or "the Act"); the CFTC regulations promulgating the Act, 17 C.F.R. §170.8; and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Section 2(a) allows a customer to initiate arbitration against any NFA member and its employee for disputes involving commodity futures contracts. Belom alleges § 2(a) violates the CEA, the CFTC regulations, and the FAA because those statutes do not mandate his participation in a customer-initiated arbitration.

2

## A. The Commodity Exchange Act and the CFTC Regulations

The CEA prohibits fraudulent and manipulative conduct in connection with commodity futures transactions. In 1983, Congress "overhaul[ed] the Act in order to institute a more comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex." *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986) (quoting H.R. Rep. No. 93-975, 93rd Cong. 2d Sess. at 1 (1974)). To implement this structure, "Congress created the CFTC as an independent agency vested with sweeping authority to adopt any rules that in its judgment are necessary to effectuate the purposes of the Act." *Geldermann, Inc. v. Commodity Futures Trading Commission*, 836 F.2d 310, 312 (7th Cir. 1987).

Section 21(b)(1) of the CEA requires a registered futures association to provide for arbitration as a dispute resolution mechanism for its customers. Specifically, the Act states the CFTC must find:

> the rules of the association provide a fair, equitable, and expeditious procedure through arbitration or otherwise for the settlement of customers' claims and grievances against any member or employee thereof: *Provided,* That (A) the use of such procedure by a customer shall be voluntary, (B) the term "customer" as used in this paragraph shall not include another member of the association ...

7 U.S.C. § 21(b)(10).

To effectuate the provisions of § 21(b)(10), the CFTC adopted regulations governing the administration of customer grievances in the futures market. The regulations provide:

> A futures association must be able to demonstrate its capability to promulgate rules and to conduct proceedings which provide a fair, equitable, and expeditious procedure, through arbitration or otherwise, for the voluntary settlement of a customer's claim or grievance brought against any member of the association or any employee of a member of the association. Such rules shall conform to and be consistent with § 17(b)(10) of the Act and be consistent with Part 180 of the Commission's regulations governing contract market arbitration and dispute settlement procedures.

3

17 C.F.R. § 170.8.

To register as a futures association, the NFA adopted an arbitration provision to comply with CFTC regulation §170.2. Section 2(a) states:

Mandatory Arbitration
(I) Claims. Except as provided in Section 5 and 6 of this Code with respect to timeliness requirements, the following disputes shall be arbitrated under this Code if the dispute involves commodity futures contracts:
    (i)    a dispute for which arbitration is sought by a customer against a member or employee thereof, or Associate ...

Mot. Dismiss, Ex. A. The NFA argues § 2(a) was enacted pursuant to the CEA and the CFTC regulation that require Belom's participation in a customer-initiated arbitration as an employee of a NFA member.

In *Geldermann, Inc. v. Commodity Future Trading Commission*, 836 F.2d 310 (7th Cir. 1987), the plaintiff, a member of the Chicago Board of Trade (CBOT), refused to arbitrate a customer-initiated claim. The plaintiff contended the CEA, 7 U.S.C. § 5(a)(11), which required a registered contract market to provide for customer-initiated arbitration, did not mandate a member's participation in that arbitration. Specifically, the plaintiff contended the CEA and CFTC regulation 17 C.F.R. § 180.2 required a member's consent to arbitrate. The court disagreed. The court relied on the well-established canon "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Geldermann*, 836 F.2d at 315 (quoting *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). The court found instructive the CFTC's position that § 5(a)(11) required commodity exchange members to submit to customer-initiated arbitration. Furthermore, the court relied on the legislative history of the Act, which Congress amended twice without overturning the CFTC's position. *Id.* at 316. Finally, the court noted Congress' express approval of the CFTC's position.

4

In amending the Act in 1978, Congress stated it was not changing the Commission's position that exchange members must participate in customer-initiated arbitration proceedings. *Id.* at 316.

*Geldermann* is instructive. The CEA and CFTC regulations governing contract market registration in *Geldermann* are identical to the futures market provisions at issue. Section 5(a)(11) required a contract market entity to "[p]rovide a fair and equitable procedure through arbitration for the settlement of customers' claims and grievances ... *Provided,* that (1) the use of such procedure by a customer shall be voluntary ...." *Geldermann,* 836 F.2d at 312; 7 U.S.C. § 5a(11) (as amended, 7 U.S.C. § 7(a)(11)). Similarly, the CFTC regulations promulgating that rule stated "[e]very contract market shall adopt rules which provide for a fair and equitable procedure through arbitration or otherwise for the settlement of customer's claims and grievances against any member or employee thereof..." *Geldermann,* 836 F.2d at 312; 17 C.F.R. § 180.2. Both § 21(b)(10) and § 170.8 have identical arbitration provisions, and use the term "voluntary" only with respect to the customer. *See supra* at 3-4. The court can assume Congress intended the same terms used in different parts of the statute to have the same meaning. *Taracorp v. NL Indus., Inc.,* 73 F.3d 738, 744 (7th Cir. 1996).

Belom has not shown the CFTC has changed its position requiring members and employees to participate in customer-initiated arbitration. Indeed, the CFTC has maintained the same language in both contract and futures market regulations since *Geldermann.* Similarly, Congress amended § 21 in 1992 without changing § 21(b)(10). *See* Sen. Rep. No. 102-22, at *58, *reprinted in* 1992 U.S.C.C.A.N. 3103; *see also Merill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 391 n.92 (1982) (courts can assume congressional awareness of judicial decisions). Furthermore, Congress has construed these two provisions as identical. In 1982, Congress amended the CEA and described § 5(a)(11) as § 17(b)(10)'s "parallel arbitration provision for contracts markets." H.R. Rep.

5

No. 7-565(I) at *32, 56, 92 (1982), *reprinted in* 1982 U.S.C.C.A.N. 387. Similarly, the CFTC has explicitly stated § 170.8 must be interpreted consistently with § 180.2. *See* 17 C.F.R. § 170.8 ("Such rules shall conform to ... and be consistent with Part 180 of the Commission's regulations governing contract market arbitration and dispute procedures"). Thus, *Geldermann*'s deference to the CFTC's construction of its statute is equally applicable here.

Belom contends the term "voluntary" in § 17(b)(10) and § 170.8 applies to both customer and employee. But *Geldermann* resolved that issue, holding the customer had the option of participating in arbitration, not the member or employee. Belom distinguishes *Geldermann* by claiming he is a non-registered employee unlike the plaintiff in *Geldermann*. However, *Geldermann* did not distinguish between registered members and non-registered employees. The CEA and CFTC regulations require futures market members *and* employees to participate in arbitration. 7 U.S.C. § 21(b)(10); 17 C.F.R § 170.8. Extending *Geldermann*'s holding to employees is consistent with the plain language of § 17(b)(10) and § 170.8. Belom argues *Geldermann* is inapplicable because the parties entered into an arbitration agreement in that case. However, the arbitration agreement in *Geldermann* was crucial to whether the plaintiff had waived his right to an Article III forum.[1] *Geldermann*, 836 F.2d at 317-319. The court did not rely on any agreement when interpreting the CEA and the CFTC regulations. Instead, the court grounded its decision on the plain language and legislative history of the statutes, and *Chevron*'s rule requiring deference to the CFTC's interpretation of its regulations. *See also R. J. O'Brien Assoc. v. Pipkin*, No. 93 C 3154, 1994 WL 96649, at *3 (N.D. Ill. Mar. 23, 1994) (NFA had the power to mandate arbitration involving non-

---

[1] Belom does not allege § 2(a) violates Article III of the United States Constitution or the Seventh Amendment.

6

customers; deference should be given to CFTC's interpretation of the CEA).

In light of the Seventh Circuit's decision in *Geldermann*, the similarity in the text between the contract and futures market arbitration provisions, Congress and the CFTC's instruction that the two provisions should be interpreted consistently, and the plain language of § 17(b)(10) and § 170.8, Belom's claim must be rejected. Section 17(b)(10) and § 170.8 require Belom, as an employee of a NFA member, to arbitrate with Ju. Accordingly, NFA code of arbitration § 2(a) is consistent with § 17(b)(10) and § 170.8.

**B.     The Federal Arbitration Act**

Belom argues NFA code of arbitration § 2(a) violates § 2 of the FAA, which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable[.]

9 U.S.C. § 2.

Belom asserts § 2 of the FAA requires his consent to arbitrate. The FAA governs enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts. *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The central purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobouno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

Contrary to Belom's assertion, § 2 of the FAA does not require consent between the parties before arbitration commences. Section 2 only states an agreement to arbitrate is valid, irrevocable, and enforceable. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). The purpose of § 2 is to place arbitration clauses on the "same footing as other contractual clauses." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Belom has not pointed to any authority

supporting his interpretation of § 2 of the FAA.

Other sections of the FAA are similarly inapplicable. Section 3 requires the court to stay litigation when there is a valid arbitration clause. 9 U.S.C. § 3; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The subject matter of the underlying arbitration is not at issue. Section 4 allows the court to compel arbitration if there is a written agreement to arbitrate between the parties. 9 U.S.C. § 4. NFA has not filed an action in this court to compel Belom to arbitrate.

Section 10 of the FAA determines the grounds to vacate an arbitration award. In *R. J. O'Brien*, 1994 WL 96649, at *2, the plaintiff sought to vacate an award in a NFA arbitration, contending the arbitrators exceeded their powers because there was no contractual agreement to arbitrate. The court held the plaintiff's signing of an NFA form binding him to all NFA requirements was sufficient consent to arbitrate. Section 10 only applies when a party brings an arbitral decision to the court to confirm or vacate the award. It is premature to determine whether a valid arbitration agreement exists under § 10.

Consequently, NFA code of arbitration § 2(a) is not in conflict with any provision of the FAA. Indeed, § 21(b)(10) and § 170.8 are consistent with the rationale of the FAA. The FAA demonstrates the strong "federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). In *Geldermann*, the court recognized providing arbitration as an option for contract market customers furthers that policy. *Geldermann*'s reasoning is equally applicable to futures market customers. Furthermore, mandatory arbitration schemes are not uncommon. *See e.g. Thomas v. Union Carbide Agricultural Products Co.*, 437 U.S. 568 (1985); *Circuit City*, 532 U.S. at 105.

Finally, Belom argues NFA cannot require his participation in the arbitration because he did

8

not enter into any arbitration agreement with Ju. This court lacks subject matter jurisdiction to address that claim. An issue of substantive arbitrability standing alone does not present a federal question; some other basis for jurisdiction must be present. *Beloit v. Local 643 of the American Federal of State*, 248 F.3d 350 (7th Cir. 2001); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983). Diversity jurisdiction is absent because both parties are citizens of Illinois. Compl. at ¶ 3. Belom's complaint alleges federal question jurisdiction based on the CEA, the CFTC regulations, and the FAA. Those claims are legally insufficient. The "general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also* 28 U.S.C. § 1367(c)(3); *Beloit*, 248 F.3d at 652-54 (district court could not address the absence of an arbitration agreement when no federal question or diversity jurisdiction existed).

## CONCLUSION

The motion to dismiss is granted. This action is dismissed with prejudice. Belom's motion for summary judgment is moot.

September 12, 2001

ENTER:

_____
Suzanne B. Conlon
United States District Judge